IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-131-FL

| | |
|---|---|
| JUANITA MELVIN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-44, DE-46] pursuant to Fed. R. Civ. P. 12(c). Claimant Juanita Melvin ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 31 December 2007, alleging disability beginning 1 October 2007. (R. 55). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 4 May 2010, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 43-47). On 25 June 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 52-69). On 22 April 2011, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of medical opinion evidence; and (2) improper assessment of Claimant's credibility. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1, 11, 16.

3

# FACTUAL HISTORY

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 57). Next, the ALJ determined Claimant had the following severe impairments: carpal tunnel syndrome ("CTS"), fibromyalgia, depression and anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, moderate difficulties with social functioning and concentration, persistence and pace and no episodes of decompensation. (R. 58).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] that has the following physical limitations: occasional climbing, balancing, stooping, kneeling, crouching or crawling, frequent bilateral fingering, handling and feeling and "1-3 step tasks that are simple, routine and repetitive." (R. 59). In making this

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); Soc. Sec. Ruling ("S.S.R.") 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 59). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 62). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 41 years old and unemployed. (R. 22). Claimant is a high school graduate, has her certified nursing assistant certificate, has taken college courses in the past, and at the time of the hearing, was enrolled in an online college course. (R. 19-20). Claimant was last employed as a part-time receptionist at a community college as part of a work-study program in 2007, while she attended classes full-time. (R. 22-23).

Claimant testified that she is unable to work due to pain associated with the right side of her body from her neck down, back pain, pain in both hands, numbness and pain in both legs and depression. (R. 24-26, 28, 34-35). Claimant described her pain on her right side as "sharp shooting" pain and testified that she has difficulty raising her right arm. (R. 26, 34). Claimant testified that she had operations on her hands in the past and has more difficulties with her right hand than her left. (R. 28). Claimant wears splints on both of her wrists. (R. 40). Claimant testified her leg pain starts in her toes followed by a cold sensation that travels up her legs. (R. 35). Claimant testified her legs "go numb" when she sits or stands "for too long." (R. 35). Claimant testified that she keeps her legs elevated when she is sitting. (R. 36). Claimant testified that she "used to have a lot of problems" with her legs swelling but weight loss has alleviated that somewhat. (R. 37). Claimant has undergone counseling for depression on a monthly basis since 2009. (R. 25).

5

Claimant takes numerous medications for pain. (R. 26). Claimant testified that one of her medications, Seroquel, makes her feel as if she is in a coma and puts her in a "deep sleep." (R. 26-27). Claimant testified that her physicians wanted her to try water aerobics; however, she has a fear of water so this form of exercise was not an option. (R. 36). Claimant testified that "in the early nineties," she was given shots in her neck and lower back. (R. 36). Claimant testified that she tries to "walk the pain out" by walking throughout her home and "us[ing] the wall as leverage." (R. 36).

Claimant testified that she cannot sit or stand or use her hands for long periods of time. (R. 24). Claimant testified that when she sits down, her back "seems like it want[s] to pop" and "that's another pain." (R. 28). When Claimant was enrolled in her college courses, she would alternate between sitting and standing as she could not sit through the entire class. (R. 28). Claimant testified she can no longer type for two hours in an eight-hour day, cannot pick change off a table without sliding it into her hand and cannot hold a drink with one hand. (R. 30). Claimant testified that she performs no household chores, shops for groceries once a month and attends doctor appointments on a monthly basis. (R. 31-32, 38-39). Claimant is able to drive but at the time of the hearing, she did not have an operating vehicle. (R. 18, 39).

### III. Vocational Expert's Testimony at the Administrative Hearing

Jeff Edwards testified as a VE at the administrative hearing. (R. 12, 43-47). After the VE's testimony regarding Claimant's past work experience (R. 44-45), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform sedentary work involving simple, routine and repetitive tasks "of one to three steps" with nonexertional

6

limitations that include no more than frequent fingering, handling and feeling, no more than occasionally climbing ramps or stairs, ladders, ropes or scaffolds and no more than occasionally balancing, stooping, kneeling, crouching and crawling. (R. 45). The VE testified in the negative but stated jobs existed in the national and regional economies that the hypothetical individual could perform, including the following: (1) lens inserter (DOT #713.687-026); (2) thread separator (DOT #789.687-174); and (3) cuff folder (DOT #685.687-014). (R. 45-46). Second, the ALJ asked the VE if any sedentary positions would be available if the hypothetical individual had the limitations posed in hypothetical one except the individual could only handle, finger and feel bilaterally four hours of an eight hour day. (R. 46). The VE testified only sedentary positions exceeding the "simple one, two, three step" limitations would be available. *Id.* Finally, the ALJ asked the VE whether any jobs would be available assuming the same limitations provided in hypothetical one but with the added limitation of a need to recline or sleep for at least one hour a day outside of the normal workday breaks. *Id.* The VE testified in the negative.

## DISCUSSION

**I.     The ALJ properly considered the medical opinion evidence.**

Claimant contends the ALJ improperly dismissed the medical opinions of Holly Roberts, MSW, and Freida Green, LPC, LCAS, of Family First Support Center, and state agency examining consultant, Mouhamed Fakhri, M.D.. Pl.'s Mem. at 16-17. This court disagrees.

A.     <u>Ms. Roberts and Ms. Green</u>

Claimant contends the ALJ erroneously dismissed the GAF findings by Ms. Roberts and Ms. Green "solely on the grounds that they were not licensed physicians." Pl.'s Mem. at 16.

Pursuant to the regulations, health care providers such as counselors and social workers are

7

not considered acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licenced optometrists, licensed podiatrists, and qualified speech-language pathologists); *see also* 20 C.F.R. §§ 404.1502, 416.902 (explaining acceptable medical sources include treating sources, nontreating sources, and nonexamining sources). Nonetheless, "evidence from other sources," such as counselors and social workers, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [her] ability to" engage in work-related activities. *Id.* §§ 404.1513(d), 416.913(d); *see also* S.S.R. 06-03p, 2006 SSR LEXIS 5, at *5, 2006 WL 2329939, at *2 (explaining the opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since "other sources" such as counselors and social workers "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their "[o]pinions . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 SSR LEXIS 5, at *8, 2006 WL 2329939, at *3. Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

Here, the ALJ, in evaluating Claimant's depression and anxiety, discussed the Global Assessment of Functioning ("GAF") scores of 43, 55 and 66 appearing in the record.[2] (R. 60). In

---

[2] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994). A GAF score

particular, the ALJ noted the GAF score of 66 was a finding by state agency consultative examiner Scott T. Schnell, M.D., who performed a psychiatric evaluation in June 2008, the GAF score of 43 was contained in a March 2009 Clinical Evaluation/Intake completed jointly by Ms. Roberts and Ms. Green and the GAF score of 55 was contained in a May 2009 Admission Assessment by a licensed psychological associate and health services provider of Tarheel Human Services. (R. 60, 469, 596, 608). The ALJ gave less weight to the GAF finding by Ms. Roberts and Ms. Green, explaining they "are not licensed physicians or psychologists, and therefore not acceptable medical sources under Social Security's regulations." (R. 60) (citing S.S.R. 06-03p). The ALJ accorded "more weight" to the GAF finding by the psychological associate and implicitly accorded greater weight to the GAF finding of Dr. Schnell. *Id.* While Claimant contends "the ALJ is not privileged to just state that they [Ms. Green and Ms. Roberts] are not medical doctors and therefore are of little or no importance," the court notes first that the ALJ did not state this in his opinion. Pl.'s Mem. at 17. Rather, the ALJ noted that under the regulations, neither Ms. Roberts nor Ms. Green are licensed physicians or psychologists and thus do not qualify as "acceptable medical sources." (R. 60); 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). Second, in accordance with S.S.R. 06-03p, the ALJ was within his discretion in affording greater weight to the GAF finding by Dr. Schnell as he is an acceptable medical source. Although Claimant may disagree with the ultimate determination made by the ALJ, the role of this court is not to re-weigh conflicting evidence. *See Craig*, 76 F.3d at 589; *see also*

---

between 41 and 50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning ...." DSM-IV at 32 (bold typeface omitted). A GAF score between 51 and 60 indicates "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." *Id.* A GAF score between 61 and 70 indicates "[s]ome mild symptoms ... [or] some difficulty in social, occupational, or school functioning ... but generally functioning pretty well . . . ." *Id.*

9

*Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996) (explaining the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence'") (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

The ALJ also acknowledged the position of the Social Security Administration ("SSA") that the GAF scale "does not have a direct correlation to the severity requirements in [the social security] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (Aug. 23, 2010); (R. 61); *accord Atkinson v. Astrue*, No. 5:10-CV-298-FL, 2011 U.S. Dist. LEXIS 92727, at *36, 2011 WL 3664346, at *11 (E.D.N.C. July 20, 2011), adopted, 2011 U.S. Dist. LEXIS 92682, 2011 WL 3664858 (E.D.N.C., Aug. 17, 2011). The ALJ stated the SSA's position was explained in part by the fact that "a GAF score is a subjective determination which applies only to the time when it was rendered, and does not generally reflect an analysis of longitudinal treatment history sufficient to render an accurate assessment of the claimant's functioning on an ongoing basis." (R. 61). Nevertheless, "[a] claimant's GAF score must be considered along with all the other relevant evidence of record." *Atkinson*, 2011 U.S. Dist. LEXIS 92727, at *36, 2011 WL 3664346, at *11 (quoting *Crockett v. Astrue*, No. 2:10-CV-64, 2011 U.S. Dist. LEXIS 60308, at *36, 2011 WL 2148815, at *11 (W.D. Va. 2011)). Here, as the ALJ stated, he "took note" of Claimant's GAF scores but in so doing, considered other factors, including the psychological stressors – "financial, family, [and] work" – identified by Claimant during the May 2009 visit with Tarheel Human Services. (R. 61) (quoting R. 608). The ALJ concluded that these stressors "suggest[] [Claimant's] depression and anxiety are situational as opposed to clinical." (R. 61). Thus, contrary to Claimant's argument, the ALJ did not "simply dismiss this evidence." Pl.'s Mem. at 17.

10

B. Dr. Fakhri

Claimant contends the ALJ erroneously evaluated Dr. Fakhri's opinion by relying on the lack of objective evidence of pain and argues further the ALJ "is unable to articulate any other reason for diminishing the findings of Dr. Fakhri." Pl.'s Mem. at 17.

"Findings of fact made by State agency ... consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." S.S.R. 96-6p, 1996 SSR LEXIS 3, at *1, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; *see also* SSR 96-6p, 1996 SSR LEXIS 3, at *2, 1996 WL 374180, at *1. Of course, an ALJ is under no obligation to accept any medical opinion. *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). In this case, the ALJ accorded "limited weight" to Dr. Fakhri's February 2008 statement that Claimant's "prognosis is poor due to her constant and severe pain." (R. 61, 446). The ALJ provided the following rationale:

> Dr. Fakhir's broad statement regarding "constant and severe pain," presumably due to the claimant's bilateral carpal tunnel syndrome and degenerative disc disease, is

11

not sufficiently supported by the objective medical findings pertaining to those impairments. [N]erve conduction studies from 2008 and 2010 show no significant abnormalities in the claimant's bilateral hands and wrists, and numerous x-rays of [sic] MRIs of the claimant's back show only minimal degenerative changes.

(R. 61).

At the outset, the court observes Claimant seemingly confuses the rules and regulations governing credibility determinations with those governing the evaluation of medical opinions. Despite Claimant's contention to the contrary, and as explained in detail below, in evaluating Claimant's credibility, the ALJ did not "require objective medical evidence to support allegations of severe pain." Although a claimant is not required to demonstrate the effects of her symptoms with objective findings, objective evidence is nevertheless a crucial evaluation tool and the ALJ properly relied on the objective evidence in this case. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (explaining "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence").

As for Claimant's argument that the ALJ cannot articulate a second reason for according Dr. Fakhri's opinion "limited weight," it is a request for this court to reweigh the evidence. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to sit *de novo* as the adjudicator. *See Mastro*, 270 F.3d at 176. In this case, the ALJ sufficiently evaluated the medical evidence in accordance with the regulatory guidelines and adequately explained the weight allocated to Fakhri's opinion based on its lack of consistency with the record as a whole. *See* 20 C.F.R. 404.1527(c), 416.927(c). The ALJ's summary of the medical evidence included the following: (1) CTS repair surgery in 1990 and 1997 (R. 289); (2) September 2007 treatment record

12

noting a recent wrist x-ray indicated "subtle evidence of scapholunate ligament disease"[3] (R. 573); (3) November 2008 upper and lower nerve conduction velocity test on Claimant's lower right extremity which revealed "mildly abnormal NCV of a right tarsal tunnel" (R. 658-59); (4) May 2010 treatment record from Huff Orthopaedic Group, P.A., indicating a positive Tinel's sign at the carpal tunnel but no significant abnormalities affecting Claimant's hands and wrists (R. 658-59); (5) June 2010 nerve conduction study which revealed a "mild right median nerve slowing at the wrist" (R. 663); (6) August 2005 cervical spine MRI which showed "minimal protrusion at C4-5" (R. 280); (7) April 2006 lumbar spine MRI which showed "no significant disc space narrowing and no fracture or dislocation" and "[s]pondyloisthesis or isthmus defect is not seen" (R. 379); (8) December 2006 MRI of the lumbar spine which was negative for any significant abnormalities (R. 425); and (9) April 2008 cervical spine MRI indicating multilevel disc bulges but no cord edema and only mild disc space narrowing at C4-5, C5-6 and C6-7 (R. 455-56). (R. 60). The ALJ noted also that a December 2009 x-ray of Claimant's right shoulder was generally unremarkable with only "minimal degenerative changes in the acromioclavicular joint." (R. 629).

Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Fakhri's opinion. *See Craig*, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant . . . is disabled, the responsibility for that decision falls on [the Commissioner]"); *Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up

---

[3]   The ALJ mistakenly attributed the September 2007 examination to Robert Harris, M.D., the referring physician, rather than Raj Nair, M.D., the treating physician. (R. 60, 571).

13

specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted).

## II. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ improperly evaluated her credibility. Pl.'s Mem. at 11. Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4,

at *6, 1996 WL 374186, at *3.

Here, the ALJ's decision indicates he considered Claimant's numerous subjective complaints associated with her impairments, including bilateral numbness in her hands, pain in her arms, neck and shoulders, tingling and sharp shooting pains in her fingers and toes, difficulty walking for extended periods of time, crying spells, decreased interest in activities and preoccupation with somantic concerns. (R. 59-60). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 59). In reaching this conclusion, the ALJ discussed at length medical records concerning Claimant's CTS, DDD, right shoulder pain, depression and anxiety, as detailed above. (R. 13). Claimant contends, however, that the ALJ either distorted the medical evidence of record or misapplied the law. Pl.'s Mem. at 12-14.

First, Claimant argues that ALJ distorted the medical record in noting numerous examinations revealing "mildly abnormal" findings or "minimal" changes with respect to Claimant's CTS, DDD and shoulder. Pl.'s Mem. at 12. In particular, Claimant contends "the entirety of the medical evidence points to the effects of [Claimant's] conditions, or in the very least her symptoms, being of greater severity than 'mild,' as alleged by the ALJ . . . . " *Id.* Claimant's argument is nonsensical as the ALJ's use of the phrases "mildly abnormal," "minimal degenerative changes," and "mild right median nerve slowing at the wrist" were direct quotes from the medical records. (R. 60, 558, 629, 663). Indeed, Claimant later concedes that her impairments "were only described as 'mild'" in the medical evidence of record. Pl.'s Mem. at 12. Claimant then argues that "physical conditions described as 'mild' can reasonably be expected to produce severe or disabling pain," arguing the ALJ used the objective medical evidence to "draw an inappropriate inference." *Id.* (citing *Walker v.*

15

*Astrue*, No. 2:03-0078, 2008 U.S. Dist. LEXIS 84791, 2008 WL 4722121, at *10 (M.D. Tenn. Oct. 21, 2008) (stating "the word 'mild' . . . as used in a technical, medical sense does not necessarily translate directly to a corresponding quantifiable level of pain"). The fact the ALJ found Claimant's CTS to be a severe impairment belies Claimant's contention. Moreover, the ALJ also relied on examination findings in determining Claimant's CTS, while severe, did not prevent Claimant from working. Such examination findings include Claimant's normal pinch strength and the lack of significant abnormalities affecting her hands and wrists. (R. 60-61, 659). While Claimant contends the ALJ "insinuates that [she] is lying about her [CTS] symptoms," it is evident the ALJ considered the examination findings within context of the entire record.

As to Claimant's alleged back impairment and shoulder pain, the ALJ properly summarized the evidence before him and was within his discretion in concluding the evidence did not support the limitations to the extent alleged by Claimant. *See Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984) (holding that subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof). The conclusions drawn by the ALJ are reasonable, and the court can find no material misstatement by the ALJ in his findings. *See e.g., Wainscott v. Astrue*, No. 1:09-1522-JFA-SVH, 2010 U.S. Dist. LEXIS 92954, at *10-11, 2010 WL 3521717, at *21 (D.S.C. Aug. 9, 2010) (noting "the objective medical evidence demonstrated mild degenerative disc disease and disc bulge [] and did not support [p]laintiff's subjective allegations of pain").

Second, Claimant faults the ALJ's consideration of the evidence regarding her CTS. In particular, Claimant contends the ALJ either "cherry-picked from the record" or "ignored the evidence that was less supportive of his RFC." Pl.'s Mem. at 14. In support of this argument, Claimant relies on the following: (1) the ALJ's discussion of a November 2008 nerve conduction

velocity test and his failure to note that it rendered no conclusion about Claimant's upper extremity pain because she was unable to tolerate the procedure (R. 554-58); and (2) a May 2010 treatment record indicating a positive Phalen's test. At the outset, the court notes the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's ... alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-*12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). Rather, the ALJ must "provide [this court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ summarized the findings of the November 2008 nerve conduction velocity test; however, as noted by Claimant, the ALJ did not mention Claimant's inability to tolerate the nerve conduction velocity test of the right upper extremity. (R. 60, 558). However, the court notes the ALJ specifically mentioned the nerve study of the bilateral upper extremities performed in June 2010, which demonstrated only a "mild right median nerve slowing at the wrist" with all other motor and sensory indicators in both the left and right hands within normal limits. (R. 60, 663). Similarly, in discussing the treatment record from May 2010, the ALJ acknowledged the positive Tinel's sign but did not mention the positive Phalen's test. (R. 60, 658-59). However, as the ALJ observed, the

17

physical evaluation performed that same day revealed no significant abnormalities affecting Claimant's hands and wrists. *Id.* Claimant has failed to explain how the omission of the November 2008 and May 2010 evidence within the ALJ's discussion is an omission of "obviously probative" evidence. *See White*, 2009 U.S. Dist. LEXIS 60309, at *11-*12, 2009 WL 2135081, at *4.

Next, Claimant faults the ALJ's consideration of her shoulder pain. In addressing Claimant's shoulder pain, the ALJ noted a December 2009 x-ray of Claimant's right shoulder was generally unremarkable with only "minimal degenerative changes in the acromioclavicular joint." (R. 629). Claimant counters "[i]n actuality, [her June 2010 cervical MRI] showed that there was moderate central disc protrusion minimally effacing the spinal cord at C4-5." Pl.'s Mem. at 12; (R. 661). Again, the ALJ is not required to discuss all evidence in the record. *Dyer*, 395 F.3d at 1211. Claimant does not explain how the June 2010 MRI impacts the ALJ's reliance on the December 2009 x-ray.

Finally, Claimant challenges the ALJ's reliance on Claimant's enrollment in an online college class. Pl.'s Mem. at 14. In discussing Claimant's computer usage, the ALJ stated as follows:

> the claimant testified that she is currently enrolled in an online college class. When questioned how she is able to take an online course on the computer with her carpal tunnel syndrome, the claimant testified that her son types of all her assignments for her. Even if such testimony is true and the claimant is not typing her assignments, the claimant still must use the keyboard and mouse to take part in weekly classes and correspondence, which suggests that her work-related limitations due to carpal tunnel are not as severe as alleged.

(R. 61). Claimant counters that the inference that she is capable of using a keyboard and mouse "quite a bit" is "completely without basis [and] represents an instance of the ALJ putting words in [Claimant's] mouth as it essentially contradicts what she said in testimony." Pl.'s Mem. at 14-15. The ALJ's summary of Claimant's testimony is accurate and the ALJ was within his discretion in

18

considering Claimant's enrollment in an online college course, along with the objective medical evidence, in concluding Claimant's allegations regarding the limitations imposed as a result of her CTS were not entirely credible. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176.

Here, the ALJ properly evaluated Claimant's subjective accounts of her pain with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant is only capable of performing sedentary exertional activities only, despite state agency opinions to the contrary, reflects the weight and credibility he afforded Claimant's subjective statements about her pain. (R. 497, 525). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-44] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-46] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the

respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 2nd day of July, 2012.

/s/ Robert B. Jones, Jr.
Robert B. Jones, Jr.
United States Magistrate Judge